UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
Dong, Li Qui (A 70 886 440) and,  :
Dong, Zhi Wen (son)               :
                                  :
                          **Plaintiffs,**    :
                                  :
                   - against -       :        02 Civ. 7178(HB)
                                  :
Tom Ridge,[1] Secretary,          :
Department of Homeland Security   :        **OPINION & ORDER**
                                  :
                          **Defendants.**    :
                                  :
------------------------------------------------------------x

**Hon. HAROLD BAER, JR., District Judge:**[*]

      On September 9, 2002, Plaintiffs Dong, Li Qui ("Li Qui") and Dong, Zhi Wen ("Zhi Wen") (collectively, "Plaintiffs"), filed the instant action against Defendant, Tom Ridge, former Secretary of the Department of Homeland Security (herein, "the Government"), for a declaration that Zhi Wen is a "child" eligible for the issuance of an asylee visa under the Child Status Protection Act. Plaintiffs move for summary judgment and the Government cross-moves to dismiss, or in the alternative, for summary judgment in the Government's favor. For the following reasons, the Government's motion to dismiss is GRANTED and Plaintiffs' motion for summary judgment is DENIED.

## I.     BACKGROUND

      On December 21, 1989, Li Qui, a forty-nine-year-old citizen of China, entered the United States. (Certified Administrative Record of Proceedings at p. 3) ("Record"). He applied to the former Immigration and Naturalization Service ("INS")[2] for political asylum on May 12, 1993, and in his application described the persecution he claimed to have suffered at the hands of local government officials in China. Id. This persecution was in reaction to the birth of his and his

---

[1] Tom Ridge was succeeded by Michael Chertoff in February of 2005 as Secretary, Department of Homeland Security. Plaintiffs' original complaint named the Attorney General as Defendant, but on December 15, 2004, Plaintiffs filed an Amended Complaint that replaced Tom Ridge as Defendant.

[*] Alissa Hazan, a summer 2005 intern in my Chambers, and currently a second year law student at New York University School of Law, provided substantial assistance in the researching and drafting of this opinion.

[2] As of March 1, 2003, the INS ceased to exist as an independent agency within the United States Department of Justice, and its functions respecting the adjudication of applications for immigration benefits were assumed by the Bureau of Citizenship and Immigration Services ("BCIS") in the United States Department of Homeland Security. See Homeland Security Act of 2002, Pub. L. 107-296, § 471(a), 116 Stat. 2135, 2205 (Nov. 25, 2002); 68 Fed. Reg. 10922-01, 2003 WL 735330 (Mar. 6, 2003).

wife's second child, which violated the Chinese government's birth control policy.  Id.  In his description of the inhumane treatment he experienced, Li Qui explained that his wife had been forced to have an abortion and he was threatened with sterilization.  Id.  Li Qui claimed to have fled the country in fear for his freedom and safety.  Id.

On February 6, 1997, Li Qui was granted political asylum pursuant to Section 208 of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1158.  (Am. Compl. ¶ 2.)  Shortly thereafter, Li Qui began to file I-730 Refugee/Asylee Relative Petitions ("I-730") to attempt to have his wife and two children join him in the United States.  (Am. Compl. ¶ 7.)   Li Qui filed six separate petitions on behalf of his son, Zhi Wen, who was fifteen years old at the time of the first petition.  Id.  Li Qui claims that the first six I-730 petitions he filed on behalf of Zhi Wen were denied due to mis-mailings, failures to properly file, and ineffective assistance of counsel.  On March 21, 2002, approximately one month prior to Zhi Wen's twenty-first birthday, the INS approved Li Qui's seventh I-730 petition, and sent it to the American Consulate in Guangzhou, China.  (Am. Compl. ¶ 8.)  Li Qui then flew to Guangzhou with the original approved petition to attempt to obtain an interview and visa issuance prior to April 14, 2004, when Zhi Wen would turn twenty-one.  (Am. Compl. ¶ 9.)   Unfortunately, the I-730 file had not reached the American Consulate in Guangzhou by that date, and this was a problem despite the Petitioner having flown to China with the approved petition well in advance of his son's twenty-first birthday, and Zhi Wen was not issued a visa.  (Am. Compl. ¶ 10.)  On September 12, 2002, Li Qui filed an eighth I-730 petition on behalf of Zhi Wen.  INS denied that petition on August 27, 2003, because by that point Zhi Wen had already turned twenty-one and thus "aged out" of eligibility as a relative of Li Qui.  (Rec. at 34-40.)

On August 6, 2002, Congress passed the Child Status Protection Act, Pub. L. No. 107-208, 116 Stat 927 (Aug. 6, 2002).  Section 4 of the CSPA amends Section 208(b)(3) of the INA, and states in pertinent part:

> An unmarried alien who seeks to accompany, or follow to join, a parent granted asylum under this subsection, and who was under 21 years of age on the date on which such parent applied for asylum under this section, shall continue to be classified as a child for purposes of this paragraph . . . if the alien attained 21 years of age after such application was filed but while it was pending.

CSPA, Section 4, 116 Stat at 928.

The Bureau of Citizenship and Immigration Services ("BCIS") (formerly INS) issued an internal memorandum ("BCIS Memo") on July 23, 2003, to provide guidance for the implementation of the CSPA.   (Memorandum For Overseas District Directors, "Processing

Derivative Refugees and Asylees under the Child Status Protection Act" July 23, 2003.) The BCIS Memo states that a derivative is eligible for "continued classification as a child" when:

> [t]he Form I-730 from which the derivative is benefiting was <u>pending on</u> August 6, 2002, and the derivative was <u>under the age of 21 at the time the I-730 was filed</u> . . . [and] Form[] I-730 [is] to be considered pending as of August 6, 2002, if [it] was approved as of that date, but the beneficiaries had not yet been issued documentation to travel to the United States.

(BCIS Memo, p. 2) (emphasis in original.) Plaintiffs assert that the BCIS Memo interprets "pending" to mean "that the I-730 was received at an overseas district office, and security checks were pending as of August 6, 2002, or that the I-730 had not been revoked prior to August 6, 2002. (Am. Compl. ¶ 12.) Plaintiffs further contend that Zhi Wen's seventh I-730 petition "has never been revoked; it was filed when he was under twenty-one, and the CSPA compels visa issuance absent any security issues." (Am. Compl. ¶ 13.)

On September 9, 2002, Plaintiffs filed a Complaint with this Court and on December 15, 2004, filed an Amended Complaint. Plaintiffs requested that the Court: (1) declare Zhi Wen a child under the CSPA eligible for issuance of an asylee visa; (2) issue a writ of mandamus, compelling the Defendant to issue an asylee visa to Zhi Wen; (3) grant attorney fees to Plaintiffs under the Equal Access to Justice Act; and (4) grant such other relief as it may deem necessary and proper. Plaintiffs then filed a motion for summary judgment. In their reply memorandum in support of this motion, Plaintiffs withdrew their request for an order to compel the Government to issue a visa, and maintained only their request for a declaration that Zhi Wen is a child under the CSPA, as well as their request for attorneys fees. As such, the only substantive issue for this Court to consider is Plaintiffs' request for such a declaration.

On March 23, 2005, the Government filed a cross-motion to dismiss the amended complaint or, in the alternative, for summary judgment. The Government contends that the complaint should be dismissed because this Court lacks subject matter jurisdiction to review visa issuance decisions made by consulates. Furthermore, the Government claims that Plaintiffs have failed to cite a statute under which this Court would have jurisdiction to hear their claims.

## II. DISCUSSION

### A. Applicable Legal Standard

The Government moves to dismiss for lack of subject matter jurisdiction in accordance with Rule 12(b)(1) of the Federal Rules of Civil Procedure. Fed. R. Civ. P. 12(b)(1). This Court must accept all of the facts alleged in the Complaint as true and "draw all reasonable references in favor

of the plaintiff." Raila v. United States, 355 F.3d 118, 119 (2d Cir. 2004). Under such a motion, "the plaintiff bears the burden of proving by a preponderance of the evidence that jurisdiction exists," Chayoon v. Chao, 355 F.3d 141, 143 (2d Cir. 2004) (citing Garcia v. Akwesasne Hous. Auth., 268 F.3d 76, 84 (2d Cir. 2001)), and jurisdiction must be "affirmatively" demonstrated. APWU et. al. v. Potter, 343 F.3d 619, 623 (2d Cir. 2003). Dismissal of the complaint is only appropriate where "it appears beyond doubt that the plaintiff can prove no set of facts which would entitle him or her to relief." Raila, 355 F.3d at 119.

### B. Subject Matter Jurisdiction

The decision to grant asylum to an alien's beneficiary is an exercise of discretion by the Secretary of Homeland Security. See 8 U.S.C. § 1158(b)(3)(A). Once asylum is granted, the beneficiary must also obtain an asylee visa from the State Department, specifically a United States Consul, in order to enter the United States. See generally 9 United States Department of State, Foreign Affairs Manual, Appendix O, Part 1700 (available on Westlaw at "IMMLS PSD FAM O 1700"); 8 U.S.C. § 1201.

As a general rule, courts lack subject matter jurisdiction to review the visa-issuing process. Wan Hsieh Shih v. Kiley, 569 F.2d 1169, 1171 (2d Cir. 1978); see also Pena v. Kissinger, 409 F.Supp. 1182, 1185 (2d Cir. 1976) ("consular decision-making [is] immune from judicial scrutiny"). "Whether the consul has acted reasonably or unreasonably is not for us to determine. Unjustifiable refusal to vise a passport . . . is beyond the jurisdiction of the court." London v. Phelps, 22 F.2d 288, 290 (2d Cir. 1927). The Supreme Court affirmed this restriction on judicial review of immigration decisions in Kleindienst v. Mandel, and held that courts may not "look behind the exercise" of an official's discretionary authority to deny admission to an alien. 408 U.S. 753, 770 (1972).

To circumvent this precedent of "consular nonreviewability," plaintiffs argue that they do not seek a review of consular decisions but rather the bases for the determinations. See Grullon v. Kissinger, 417 F.Supp. 337 (E.D.N.Y. 1976); Al Makaaseb General Trading Co., Inc. v. Christopher, 94 Civ. 1179, 1995 WL 110117, at *1 (S.D.N.Y. Mar. 13, 1995). In Grullon, the plaintiff, a lawful permanent resident, attempted to obtain an immigrant visa for his father that was denied because an American Consulate concluded that the visa applicant was not the legitimate father of the plaintiff. Grullon, 417 F.Supp. at 338. The plaintiff sought to distinguish his case from the Supreme Court's decision in Kleindienst on the basis that he did not seek review of a

4

consular action, but merely a preliminary declaration of his father's immigrant status. Grullon, 417 F.Supp. at 339. The district court held that because the plaintiff's complaint alleged denial of a visa, his request for a declaration of status was effectively a demand for "judgment directing issuance of the visa," and therefore the court lacked jurisdiction to review the consular acts. Id. at 339-40.

In Al Makaaseb, the plaintiffs sought a declaration from the district court that the consul's decision to deny a visa was unreasonable. 1995 WL 110117, at *1. Similar to Grullon, the plaintiffs in Al Makaaseb maintained that their challenge was not of the consul's denial of the visa but rather an allegedly wrongful inclusion of the visa applicant on a "lookout" list that resulted in the denial. Al Makaaseb, 1995 WL 110117, at *3. The court in Al Makaaseb held that "such a challenge cannot be divorced from an attack on the decision itself . . . [and] [that] plaintiffs cannot make an end-run around nonreviewability of the decision by challenging its foundation." Id. The court concluded that a determination of the legitimacy of the visa applicant's inclusion on the "lookout" list "would inevitably thrust this Court into the forbidden realm of reviewing consular visa decisions" and therefore it lacked jurisdiction to consider the plaintiffs' claim. Id. at *4.

Al Makaaseb further held that judicial review of a visa denial is prohibited even where the consular decision is allegedly contrary to agency regulations or policy.

> The doctrine of nonreviewability of consular officers' visa determinations is essentially without exception. Thus, even where a consular judgment rests on allegedly erroneous information, courts generally will not intervene.

Id. at *2 (internal quotations omitted). This decision extends to circumstances where a consular officer may have inaccurately interpreted and applied the INA. Id. See also Burrafato v. United States Dep't of State, 523 F.2d 554, 557 (2d Cir. 1975) (holding that jurisdiction did not exist even if the Department of State failed to comply with its own regulation).

Here, Plaintiffs have abandoned their request that the Court order a visa issuance for Zhi Wen, and only seek a declaration of Zhi Wen's status as a "child," pursuant to INA promulgations that interpret the CSPA. Plaintiffs' situation replicates that of the plaintiffs in the Grullon and Al Makaaseb cases. Grullon, 417 F.Supp. at 337; Al Makaaseb, 1995 WL 110117, at *1. Here, Plaintiffs effectively seek a review of a consular decision by "challenging its foundation." Al Makaaseb, 1995 WL 110117, at *3. The American Consul's decision to not issue Zhi Wen a visa was based on his age of twenty-one, just as the visa denials in Grullon and Al Makaaseb were based on status determinations of the legitimacy of a father-son relationship and the inclusion of an

5

applicant on a "lookout" list, respectively. Grullon, 417 F.Supp. at 337; Al Makaaseb, 1995 WL 110117, at *1. A review and declaration as to whether or not Zhi Wen should be considered a "child" would inexorably propel this Court into the proscribed territory of reviewing consular visa decisions and as such is outside the scope of review. Al Makaaseb, 1995 WL 110117, at *4.

The Consul's decision to deny Zhi Wen a visa appears, at least from the record before me, to contradict the BCIS policy articulated in the BCIS Memo. Zhi Wen should have been considered a "child" while the issuance of his visa was pending. If true, this is a violation of law perpetuated not by malfeasance but by an unthinking, slow-moving consul. While reprehensible, it cannot be a basis for judicial review. The Court's inability to review consular decisions is "essentially without exception." Al Makaaseb, 1995 WL 110117, at *2. In addition, although the Government seems to have no reason or explanation for its failure to issue Zhi Wen's visa to enter the country prior to his twenty-first birthday, unfortunately "[w]hether the consul has acted reasonably or unreasonably is not for us to determine." London, 22 F.2d at 290.

As such, this Court lacks jurisdiction to right the wrong. Perhaps Congress will do it.

### III. CONCLUSION

For the reasons set forth above, Plaintiff's motion for summary judgment is DENIED and the Government's motion to dismiss is GRANTED. The Clerk of Court is instructed to close this motion and any open motions and remove this case from my docket.

**IT IS SO ORDERED.**
New York, New York
August 10, 2005

U.S.D.J.

6